AO106(Rev.5/85) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person, property, or premises to be searched)

**xxxx x˟ˣ Xxxxxx, X.X., Xxxxxxxxx Xxxx
Xxxxxxxxxxx, X.X.**

## APPLICATION AND AFFIDAVIT
## FOR SEARCH WARRANT

CASE NUMBER:

(Further described below)

I ____**Timothy Palchak**_____being duly sworn depose and say:

I am a(n)____**Detective with the Metropolitan Police Department**_____ and have reason to believe
(Official Title)
that ☐ on the person of or ☒ on the property or premises known as   (name, description and or location)

**xxxx x˟ˣ Xxxxxx, X.X., Xxxxxxxxx xxxx, Xxxxxxxxxxx, X.X.**

in the District of Columbia, there is now concealed a certain person or property, namely (describe the person or property to be searched)
**digital storage devices, documents, photographs, receipts, correspondence, and indicia of occupancy,**

which is (state one or more bases for search and seizure set forth under Rule 41(c) of the Federal Rules of Criminal Procedure)
**which constitute evidence of a criminal offense**

concerning a violation of Title __**18**__ United States Code, Section(s) **2252, 2252A**__.  The facts to support a finding of
Probable Cause are as follows:

SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN

Continued on the attached sheet and made a part hereof.      ☒  YES    ☐  NO

**Jeffrey Pearlman
Federal Major Crimes Section
(202) 353-2385**

Sworn to before me, and subscribed in my presence

_____
Date

_____
Name and Title of Judicial Officer

**Signature of Affiant
Timothy Palchak, Detective
Metropolitan Police Department**

at Washington, D.C.

_____
Signature of Judicial Officer

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT
FOR THE PREMISES KNOWN AS
xxxx xxx Xxxxxx Xxxxxxxxx # xxxx Xxxxxxxxxx, XX xxxxxx

I, Timothy Palchak, being duly sworn, depose and state the following

1.  On July 12, 2007, Your Affiant  an affidavit ("July 12 Affidavit") in support of an application for a  search warrant for the premises known as xxxx x$^{xx}$ Xxxxxx XX, #xxxx, Xxxxxxxxxx, X.X.. On July 12, 2007, Magistrate Judge Alan Kay issued a search warrant for the premises. Your Affiant hereby adopts and incorporates by reference herein the July 12 2007 Affidavit, including Attachments A and B thereto, copies of which July 12 2007 Affidavit and Attachments are attached to this Affidavit.

2.   Law enforcement officers attempted to execute the warrant at the premises on July 12, 2007. Prior to making entry onto the premises, however, Your Affiant was made aware that the resident and sole occupant of the property, Christian Donval, was on vacation in France.  In order to avoid forcible entry onto the premises and to conduct the  search of the premises more efficiently and less intrusively, law enforcement officers made the determination to wait until the occupant of the premises, Christian Donval, returned to the United States before executing the search warrant.

3.   The time provided for execution of the warrant issued by Magistrate Judge Robinson for the search of the above described premises expired on July 18, 2007.

4.  On August 6, 2007, Your Affiant  was informed by Immigration and Customs Enforcement that ("ICE") that Donval had returned to the United States from France. A survey of public data bases on August 7, 2007, indicates that Donval continues to reside at xxxx x$^{xx}$ Xxxxxx, X.X., Xxxxxxxxx #xxxx.

1

CONCLUSION

5.      Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence, fruits, and instrumentalities of criminal offenses may be located at the residence described in July 12 Affidavit Attachment A, in violation of 18 U.S.C. Sections 2251, 2252 and 2252A.

6.      I, therefore, respectfully request that the attached warrant be issued authorizing the search and seizure of the items listed in July 12 Affidavit Attachment B.

_____
TIMOTHY PALCHAK
Detective, Metropolitan Police
Department

SUBSCRIBED and SWORN
before me this _____ day of August 2007 in the
District of Columbia

_____
ALAN KAY
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF COLUMBIA

2

AO93(Rev.5/85)Search Warrant

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

1425 4th Street, S.W. Apartment A815
Washington, D.C.

**SEARCH WARRANT**

CASE NUMBER: 0 7 - 3 5 7 - **M** - 0 1

TO:   Timothy Palchak     and any Authorized Officer of the United States

Affidavit(s) having been made before me by Detective Timothy Palchak   who has reason to believe that
(name, description and or location)

located within 1425 4th Street, S.W. Apartment A815

in the District of Columbia, there is now concealed a certain person or property, namely (describe the person or property)

digital storage devices, documents, photographs, receipts, correspondence, and indicia of occupancy, ☐ ☐ ☐

I am satisfied that the affidavits(s) and any recorded testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and establish grounds for the issuance of this warrant.

**YOU ARE HEREBY COMMANDED** to search on or before _____
                                                                            (Date)
(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and making the search ☑ (in the daytime - 6:00 A.M. to 10:00 P.M.) ☐ (at any time in the day or night as I find reasonable cause has been established) and if the person or property be found there to seize same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly return this warrant to the undersigned U.S. Judge/U.S. Magistrate Judge, as required by law.

_____
Date and Time Issued     AUG 12 2007  3 45 pm
            ALAN KAY
      U.S. MAGISTRATE JUDGE
Name and Title of Judicial Officer

at Washington, D.C.

_____
Signature of Judicial Officer

AO106(Rev.5/85) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person, property, or premises to be searched)

1425 4th Street, S.W. Apartment A815
Washington, D.C.

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

CASE NUMBER 0 7 - 3 5 7 - M - 0 1

(Further described below)

I ___Timothy Palchak_____ being duly sworn depose and say:

I am a(n)___Detective with the Metropolitan Police Department_____ and have reason to believe
          (Official Title)

that (name, description and or location)
     located within 1425 4th Street, S.W. Apartment A815

in the District of Columbia, there is now concealed a certain person or property, namely (describe the person or property to be searched)
     digital storage devices, documents, photographs, receipts, correspondence, and indicia of occupancy,

which is (state one or more bases for search and seizure set forth under Rule 41(c) of the Federal Rules of Criminal Procedure)
     which constitute evidence of a criminal offense

concerning a violation of Title _18 USC_ United States Code, Section(s) _2252, 2252A_ . The facts to support a finding
of Probable Cause are as follows:

SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN

Continued on the attached sheet and made a part hereof.    YES  x☐  NO

Patricia Stewart
Federal Major Crimes
(202)202-514-7064

                            Signature of Affiant

Sworn to before me, and subscribed in my presence

**JUL 1 2 2007**
_____    at Washington, D.C.
Date

    **ALAN KAY
    U.S. MAGISTRATE JUDGE**
_____    _____
Name and Title of Judicial Officer    Signature of Judicial Officer

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT
FOR THE PREMISES KNOWN AS
1425 4th Street Southwest # A815 Washington, DC 20024

I, Timothy Palchak, being duly sworn, depose and state the following

1.  Your Affiant has been a police officer with the United States Washington D.C.
Metropolitan Police Department since 1994.  In 2000 I was promoted to Detective
Grade 2 and am currently serving at this rank.  During my twelve year tenure with the
Metropolitan Police Department I have been assigned to the Third District Patrol
Operations, Prostitution Enforcement Unit, and I am currently assigned to the Northern
Virginia Regional Internet Crimes Against Children Task Force. I have received training
in the following subject areas or courses:  Family Violence and Child Protection, Basic
Investigator course, Interview and Interrogation, Sexual Assault Nurse Examination,
Children's Hospital Conference on Responding to Child Maltreatment, Child Abuse and
Child Exploitation Investigation techniques, undercover Internet Crimes Against Children
(ICAC) investigations course and image scanning. I have participated in numerous child
abuse investigations, child sex abuse investigations and ICAC investigations, including
investigations of on-line child sexual exploitation offenses.

2.  This affidavit is submitted in support of an application for a search warrant for
the residence of Christian Donval 1425 4th Street # A815 SW Washington, DC 20024,
and the computer(s) located therein, for evidence of violations of Title 18, United States
Code, Sections 2252 & 2252A. The Subject Premises are more fully described in
Attachment A.

3.  Because this affidavit is being submitted for the limited purpose of securing a
search warrant, I have not included each and every fact known to me concerning this
investigation.  I have set forth facts that I believe are necessary to establish probable
cause to believe that evidence of violations of Title 18, United States Code, Sections
2252 and 2252A is presently located at the Subject Premises.

1

RELEVANT STATUTES

4.  This investigation concerns alleged violations of 18 U.S.C. §§ 2252 and 2252A, relating to material involving the sexual exploitation of minors.

5.  18 U.S.C. §§ 2252 and 2252A prohibit a person from knowingly transporting, receiving, distributing or possessing in interstate or foreign commerce, by computer or mail, any visual depiction of minors engaging in sexually explicit conduct (child pornography).

DEFINITIONS

6.  The following definitions apply to this Affidavit and Attachment B to this Affidavit:

7.  "Child Pornography" includes the definition in 18 U.S.C. § 2256(8) (any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or © the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct).

8.  "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. See 18 U.S.C. § 2256(5).

9.  "Minor" means any person under the age of eighteen years. See 18 U.S.C. § 2256(1).

10.  "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; © masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person. See 18 U.S.C. § 2256(2).

2

11. "Internet Service Providers" or "ISPs" are commercial organizations which provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers, including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment. ISPs can offer various means by which to access the Internet including telephone based dial-up, broadband based access via a digital subscriber line (DSL) or cable television, dedicated circuits, or satellite based subscription. ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth, that the connection supports. Many ISPs assign each subscriber an account name such as a user name or screen name, an e-mail address, and an e-mail mailbox, and the subscriber typically creates a password for the account. By using a computer equipped with a telephone or cable modem, the subscriber can establish communication with an ISP over a telephone line or through a cable system, and can access the Internet by using his or her account name and password.

12. "Domain Name" refers to the common, easy to remember names associated with an Internet Protocol address. For example, a domain name of "www.usdoj.gov" refers to the Internet Protocol address of 149.101.1.32. Domain names are typically strings of alphanumeric characters, with each level delimited by a period. Each level, read backwards – from right to left – further identifies parts of an organization. Examples of first level, or top-level domains are typically .com for commercial organizations, .gov for the governmental organizations, .org for organizations, and .edu for educational organizations. Second level names will further identify the organization. For example usdoj.gov further identifies the United States governmental agency to be the Department of Justice. Additional levels may exist as needed until each machine is uniquely identifiable. For example, www.usdoj.gov identifies the World Wide Web server located at the United States Department of Justice, which is part of the United States government.

13. "Log Files" are records automatically produced by computer programs to document electronic events that occur on computers. Computer programs can record a wide range of events including remote access, file transfers, logon/logoff times, and

system errors. Logs are often named based on the types of information they contain. For example, web logs contain specific information about when a website was accessed by remote computers; access logs list specific information about when a computer was accessed from a remote location; and file transfer logs list detailed information concerning files that are remotely transferred.

14. "Hyperlink" refers to an item on a web page which, when selected, transfers the user directly to another location in a hypertext document or to some other web page.

15. "Website" consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text Mark-up Language (HTML) and is transmitted from web servers to various web clients via Hyper-Text Transport Protocol (HTTP).

16. "Uniform Resource Locator" or "Universal Resource Locator" or "URL" is the unique address for a file that is accessible on the Internet. For example, a common way to get to a website is to enter the URL of the website's home page file in the Web browser's address line. Additionally, any file within that website can be specified with a URL. The URL contains the name of the protocol to be used to access the file resource, a domain name that identifies a specific computer on the Internet, and a pathname, a hierarchical description that specifies the location of a file in that computer.

17. The terms "records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing) or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

4

18.    Based upon my knowledge, training and experience, and the experience of other law enforcement personnel, I know that searches and seizures of evidence from computers commonly require agents to seize most of the computer items (hardware, software and instructions) to be processed later by a qualified computer expert in a laboratory or other controlled environment.  That is almost always true because of the following:

19.    Computer storage devices (like hard drives, diskettes, tapes, laser disks, Bernoulli drives and others) store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she may store it in random order with deceptive file names.  This requires searching authorities to examine all the stored data to determine whether it is included in the warrant.  This examination process can take weeks or months, depending on the volume of the data stored, and it would be impractical to attempt this kind of data search on-site.

20.    Searching computer systems for criminal evidence is a highly technical process requiring expert skills in a properly controlled environment.  The vast array of computer hardware and software available today requires even computer experts to specialize in some systems and applications.  It is difficult to know before a search which expert should analyze the system and its data.  A search of a computer system is an exacting scientific procedure, which is designed to protect the integrity of the evidence and to recover hidden, erased, compressed, password-protected, and other encrypted files.  Because computer evidence is extremely vulnerable to tampering and destruction (both from external sources and from code embedded in the system as "booby-trap"), the controlled environment of a laboratory is essential to its complete and accurate analysis.

21.  In order to fully retrieve data from a computer system, the analyst needs all magnetic storage devices, as well as the central processing unit ("CPU").  In cases like this one, where the evidence consists partly of graphic files, the monitor and printer are also essential to show the nature and quality of the graphic images that the system can produce.  In addition, the analyst needs all assisting software (operating systems or interfaces, and hardware drivers) and any applications software, which may have been

5

used to create the data (whether stored on hard drives or on external media), as well as all related instructional manuals or other documentation and security devices.

Moreover, searching computerized information for evidence or instrumentalities of crime commonly requires the seizure of the entire computer's input/output periphery devices (including related documentation, passwords and security devices) so that a qualified expert can accurately retrieve the system's data in a controlled environment. Peripheral devices, which allow users to enter and retrieve data from stored devices, vary widely in their compatibility with other hardware and software. Many system storage devices require particular input/output devices in order to read the data on the system. It is important that the analyst be able to properly retrieve the evidence sought.

## BACKGROUND REGARDING SEIZURE OF COMPUTERS

22. In addition to being evidence of a crime, in cases of this sort, there is probable cause to believe that the computer and its storage devices, the monitor, keyboard, printer, modem and other system components were used as a means of committing offenses involving the sexual exploitation of minors in violation of law, and should all be seized on that basis alone. Accordingly, permission is sought herein to seize and search computers and related devices consistent with the scope of the requested search.

## BACKGROUND REGARDING THE INTERNET

23. Your affiant has been formally trained in the investigation of crimes involving the sexual exploitation of children. I also own my own computer and have personal knowledge of the operation of a computer since 1996. Based on this training and knowledge, and the experience of other law enforcement personnel involved in this investigation, I know the following:

24. The Internet is a worldwide computer network that connects computers and

6

allows communications and the transfer of data and information across state and national boundaries. A user accesses the Internet from a computer network or Internet Service Provider ("ISP") that connects to the Internet. The ISP assigns each user an Internet Protocol ("IP") Address. Each IP address is unique. Every computer or device on the Internet is referenced by a unique IP address the same way every telephone has a unique telephone number. An IP address is a series of four numbers separated by a period, and each number is a whole number between 0 and 255. An example of an IP address is 192.168.10.102. Each time an individual access the Internet, the computer from which that individual initiates access is assigned an IP address. A central authority provides each ISP a limited block of IP addresses for use by that ISP's customers or subscribers.

25. Most photographs and other images can be used to create data that can be stored in a computer. This storage can be accomplished using a "scanner," which is an optical device that can recognize characters on paper and, by using specialized software, convert them to digital form. Storage can also be captured from single frames of video and converted to an image file. After the photograph or other image has been scanned into the computer, the computer can store the data from the image as an individual "file." Such a file is known an image file. Computers are capable of displaying an image file as a facsimile of the original image on a computer screen.

26. The computer's capability to store images in digital form makes it an ideal repository for child pornography. A single floppy or compact disk can store dozens of images and hundreds of pages of text. The size of the electronic storage media (commonly referred to as a "hard drive") used in home computers has grown tremendously within the last several years. Hard drives with the capacity of 250 gigabytes are not uncommon. These drives can store thousands of images at very high resolution. Magnetic storage located in host computers adds another dimension to the equation. It is possible to use a video camera to capture an image, process that image in a computer with a video capture board, and save that image to storage in another country. Once this is done, there is no readily apparent evidence at the "scene of the

7

crime". Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

27. With Internet access, a computer user can transport an image file from the Internet or from another user's computer to his own computer, so that the image file is stored in his computer. The process of transporting an image file to one's own computer is called "downloading." The user can then display the image file on his computer screen, and can choose to "save" the image on his computer and or print out a hard copy of the image by using a printer device (such as a LaserJet or inkjet).

28. Importantly, computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet. Electronic files downloaded to a hard drive can be stored for years at little to no cost. Even when such files have been deleted, they may be recoverable months or years later using readily-available forensic tools. When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space − that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space − for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or cache. The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

BACKGROUND OF INVESTIGATION

8

29.    In April 2006, Immigration and Customs Enforcement's Cyber Crimes Center, Child Exploitation Section initiated an investigation into a criminal organization operating a commercial child pornography website known as "Home Collection." The investigation has revealed that the same organization is operating numerous commercial child pornography websites.  In addition, the organization utilizes various [1]PayPal accounts to process the payments or access to the member restricted websites.

[1]The following information was obtained from PayPal's website located at URL http://www.PayPal.com: founded in 1998, PayPal, an eBay Company, enables any individual or business with an email address to securely, easily and quickly send and receive payments online using a credit card or bank account information.  It is the most popular way to electronically pay for eBay auctions and it is becoming an inexpensive way for merchants to accept credit cards in their on-line storefronts instead of using a traditional payment gateway.    PayPal's service builds on the existing financial infrastructure of bank accounts and credit cards and utilizes the world's most advanced proprietary fraud prevention systems to create a safe, global, real-time payment solution.  PayPal is a significant leader in online payment solutions, with 78 million account members worldwide.  PayPal is available in 56 countries and regions around the world.  Buyers and sellers on eBay, online retailers, online businesses, including operators and hosts of Internet websites, as well as traditional offline businesses, transact with PayPal.  PayPal identifies its accounts by the contact email address or addresses an account holder provides to PayPal as a contact address.

Buyers and sellers on eBay, online retailers, online businesses, including operators and hosts of Internet websites, as well as traditional offline businesses, transact with PayPal.  PayPal identifies its accounts by the contact email address or addresses an account holder provides to PayPal as a contact address.

30. The initial member restricted website was located at URL: http://members.homecollect.us    and was known as "Home Collection."    The investigation has revealed that the organization offered individuals monthly access to a member restricted website for $79.95 a month.  The member restricted website solicits customers through an advertising website.    The member restricted website communicates with customers via several different e-mail accounts.   ICE (Immigration and Customs Enforcement) has conducted over 60 undercover transactions at the advertising websites associated with this investigation, which provided access to approximately 23 different member restricted websites.

31.  Each one of the undercover purchases followed one of the below listed patterns:

Pattern One:

i.    The ICE agent accessed a specific advertising website.

ii.    The ICE agent was redirected to an "iWest" payment website and entered personally identifiable information, including credit card information.  The "iWest" payment website identified a specific member restricted website through the use of the subject identifiers.

iii.    After completing the required information and clicking submit, the ICE agent was redirected to a second web page indicating the payment was currently being processed and to check for further information in the e-mail account provided by the ICE agent.

iv.    The ICE agent received an e-mail containing payment completion instruction, which included a hyperlink to a PayPal account.

v.    The ICE agent completed the transaction via the PayPal account.

vi.    The ICE agent received access to the member restricted website from one of the administrative e-mails associated with the criminal organization.

Pattern Two:

    I.      The ICE agent accessed a specific advertising website.

    ii.     The ICE agent was redirected to an "iWest" payment website and entered personally identifiable information, including credit card information. The "iWest" payment website identified a specific member restricted website through the use subject identifiers.

    iii.    After completing the required information and clicking submit, the ICE agent was redirected to a second web page indicating the payment was currently being processed. The web page also contained a button the agent had to click to complete the payment.

    iv.    The ICE agent clicked the button and was redirected to a secure PayPal payment web page.

    v.     The ICE agent completed the transaction via the PayPal account.

    vi.    The ICE agent received access to the member restricted website from one of the administrative e-mails associated with the criminal organization.

IDENTIFICATION OF CERTAIN PAYPAL ACCOUNTS

32.    As indicated above, this criminal organization utilizes multiple PayPal accounts to process payments for the monthly subscription fees to the member restricted website. PayPal maintains transactional records for each PayPal account. The transactional records indicate at least the following items: date of purchase, time of purchase, name of customer, subject identifier assigned by the owner of the PayPal account indicating what the customer is purchasing, amount of purchase, customer's IP address, customer's e-mail address, seller's e-mail address, and the Item ID. In addition, PayPal also captures the customer's full billing address.

33.    From approximately June 2006 to February 2007, ICE agents identified numerous child exploitation advertising websites that used the "iWest" payment website. As described in the two patterns listed in paragraph 31, ICE agents that conducted the undercover transactions would enter personally identifying information at

the "iWest" payment website, but would ultimately be redirected to PayPal to complete the transaction. ICE agents made undercover transactions for access to child exploitation member restricted websites to the following PayPal accounts:

| Business Name: | Primary E-Mail Address: |
| --- | --- |
| Proof Soft | androdork@gmail.com |
| Lencomps LTD | lencomps@juno.com |
| Proof Soft | a_chakin@yahoo.com |
| Belfast LTD | elfastltd@juno.com |
| Belfast LTD | ag89@nc.rr.com |
| Financial Services | belfast_ltd@juno.com |
| Proof Soft | pallone21@gmail.com |
| Bullet Proof Soft | rrpay@hotmail.com |
| Bullet Proof Soft | Preyes1101@hotmail.com |
| Bullet Proof Soft | freeawh_bsb@yahoo.com |
| Bullet Proof Soft | bsb22flash@yahoo.com |
| Lencomps LTD | lencompsltd@juno.com |
| N/A | r.corax@gmail.com |
| Jfire Financial | ufire@hotmail.com |
| A1_Soft_TM | ebfs@email.com |
| S_Market | carbonnoid@hotmail.com |

## IDENTIFICATION OF THE SUBJECT IDENTIFIERS AND ITEM IDS USED

34.    As discussed in paragraph 30, ICE agents have conducted over 60 undercover transactions during the course of this investigation. The undercover transactions have identified a group of PayPal accounts that are being used to facilitate customer payments to specific child exploitation member restricted websites. Those specific child exploitation member restricted websites can be identified in the PayPal transactional logs by the subject identifiers utilized by this criminal organization. In or about November 2006, the criminal organization stopped utilizing the listed subject identifiers to identify the specific member restricted websites associated with each purchase. They began using generic Invoice numbers, with a unique Invoice number assigned to each transaction. In addition to the subject identifiers, the criminal organization also assigned Item IDs to each of the specific member restricted websites. For each specific member restricted website, the criminal organization assigned a

12

unique Item ID, which also appeared in the PayPal transactional logs.  The following subject identifiers with associated Item IDs were identified during undercover transactions:

| Subject Identifier: | Item Number: |
| --- | --- |
| Sexy Angels | 000 |
| Desired Angels | 1001 |
| Home Collection | 1002 |
| SickCR Package v5.06 Build 3638 | 1003 |
| DarkRO XP Tools v2.04 | 1004 |
| Underage Home | 1005 |
| Angel Collection 1006 | 1006 |
| Angel Collection 1010 | 1010 |
| HL Package/Hardlovers Paysite | 1012 |
| RH Collection | 1013 |
| Spycam Lolitas | 1144 |
| Boys Say Go | 1156 |
| Video Shop CD1 | 1159 |
| Video Shop CD2 | 1160 |
| Video Shop CD3 | 1161 |
| Video Shop CD4 | 1162 |
| Video Shop CD5 | 1163 |
| Kidz Index | 1177 |
| CP City | 1202 |
| Lolivirgins | 1192 |
| Excited Angels | 1218 |
| Plola/reallola.info | 1179 |

## THE SUBJECT OF THIS SEARCH WARRANT

35.  Analysis of the transactional logs obtained from PayPal provide the name and address of various customers that purchased access to at least one of the identified child pornography websites, including the subject of this search warrant as described and detailed below.

36. On January 17, 2007, Christian Donval made a payment to PayPal to the following email address: BELFAST_LTD@JUNO.COM.  The payment (79.95) was for access to reallola magazine volume 2.  The advertising website that transferred Donval to PayPal so that he could access reallola magazine volume 2 depicted nude

prepubescent children in sexual positions exposing their genitalia.    The PayPal transactional logs provided the following relevant information:

Date: February 5, 2007
Time: 21:37
Name: Christian Donval
Subject: Invoice # 43692
Other IP: 68.34.4.31
Gross: $79.95
From Email Address: cdonval@comcast.net
To Email Address: Belfast_ltd@juno.com
Item ID: 1179
Referral URL: reallola.info
First Name: Christian
Last Name: Donval
Primary Email: cdonval@comcast.net
Primary Address: 1425 4th Street # A815 SW Washington, DC 20024
Night Phone: 202 390-5139
Signup Date: December 21, 2004
Last Web Access: [March 13, 2007]

37. As stated in paragraph 34, ICE agents have conducted over 60 undercover transactions during the course of this investigation.   In conducting these undercover transactions, ICE agents have identified specific subject identifiers and Item Ids that are associated with child exploitation member restricted websites. ICE agents have not yet made purchases from Item ID 1179/reallola.info, but the subject identifier reallola.info refers to a child exploitation member restricted website known as "reallola magazine volume 2," and its advertising contains depictions of nude prepubescent children in sexual positions exposing their genitalia.   In addition, the address to which the PayPal payment was directed and sent by Donval, BELFAST_LTD@JUNO.COM, was an address to which PayPal payments were directed and sent in some of the undercover transactions.

38.   As indicated in paragraph 36, the PayPal transactional logs for Christian Donval contained a referring URL of plola.com.  The referring URL indicates the website the customer was viewing immediately prior to connecting to the PayPal payment page. This information identifies the specific website redirecting a customer to a PayPal

payment page.   NCMEC was able to verify that the URL listed in this paragraph contained child exploitation images.

39. Plola.com: The member restricted website associated with the subject identifier 1179 is known as reallola volume 2, which advertising page depicts several prepubescent females posing nude in sexual positions exposing their genitalia.

40.  A check with the District of Columbia Division of Motor Vehicles on or about July 12, , 2007 revealed that an individual named Christian Donval with a date of birth of December 06, 1965 resides at 1425 4th Street SW # A0815 Washington, DC 20024

A check of commercial data bases on the same date reflects that Christian Donval resides at 1425 4th Street, S.W. #A0815, Washington, D.C.  A law enforcement agent has viewed the premises and observed that the writing "Donval" appears on the door plate of the door to apartment A0815 inside of 1425 4th Street, S.W., Washington, D.C.

41. The fact that Christian Donval spent $79.95 to purchase membership to a website devoted to child pornography causes your affiant to believe that Christian Donval has a sexual interest in children.   Based on my previous investigative experience related to child pornography investigations, including investigations of subjects who subscribed to websites offering access to child pornography, I have learned that individuals who subscribed to such websites are often individuals who have a sexual interest in children and in images of children, and who download images and videos of child pornography.  Based upon my knowledge, experience, and training in child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the receipt and collection of child pornography:

a.      Individuals who have a sexual interest in children or images of children may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

15

b.       Individuals who have a sexual interest in children or images of children may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media.  Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c.       Individuals who have a sexual interest in children or images of children almost always possess and maintain their "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location.  Individuals who have a sexual interest in children or images of children typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

d.       Likewise, individuals who have a sexual interest in children or images of children often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area.  These collections are often maintained for several years and are kept close by, usually at the collector's residence, to enable the individual to view the collection, which is valued highly.

e.       Individuals who have a sexual interest in children or images of children also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

f.       Individuals who have a sexual interest in children or images of children prefer not to be without their child pornography for any prolonged time period.  This

16

behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

CONCLUSION

42.  Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence, fruits, and instrumentalities of such criminal offenses may be located at the residence described in Attachment A, in violation of 18 U.S.C. Sections 2251, 2252 and 2252A.

43.  I, therefore, respectfully request that attached warrant be issued authorizing the search and seizure of the items listed in Attachment B.


TIMOTHY PALCHAK
Detective, Metropolitan Police Department


SUBSCRIBED and SWORN
before me this ___ day of July 2007 in the
District of Columbia  JUL 1 2 2007

DEBORAH A. ROBINSON                    **ALAN KAY**
UNITED STATES MAGISTRATE JUDGE  **U.S. MAGISTRATE JUDGE**
DISTRICT OF COLUMBIA

17

ATTACHMENT A

THE PREMISES KNOWN AS 1425 4TH STREET, S.W. APARTMENT A815 ARE LOCATED WITHIN A MULTI-UNIT HIGH RISE APARTMENT BUILDING DESIGNATED 1425 4TH STREET, S.W. "A BUILDING". THE BUILDING IS LOCATED ON THE SOUTHWEST CORNER OF 4TH STREET, S.W.,. THE EXTERIOR OF THE BUILDING IS RED BRICK IN COLOR. THERE ARE WHITE BALCONIES PROTRUDING FROM THE BUILDING ON BOTH SIDES OF THE BUILDING.

THE ENTRANCE TO THE EXTERIOR BUILDING IS A GLASS DOOR COVERED WITH A DOOR COMPOSED OF WOODEN SLATS. THE NUMERALS "1425" ARE ATTACHED TO THE WOODEN PORTION OF THE DOOR VERTICALLY.

APARTMENT A815 IS LOCATED ON THE 8TH FLOOR OF THE MULTI-UNIT BUILDING. THE APARTMENT HAS A DARK BROWN DOOR AND A BRASS PLATE AFFIXED TO THE DOOR. THE NUMERALS "A815" AND THE LETTERS "DONVAL" ARE APPEAR IN WHITE ON A BLACK BACKGROUND ON THE BRASS PLATE.

ATTACHMENT B

DESCRIPTION OF ITEMS TO BE SEARCHED FOR AND SEIZED

a.    images of child pornography and files containing images of child pornography in any form wherever it may be stored or found including, but not limited to:

I.    any computer, computer system and related peripherals; tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drive and other computer related operation equipment, digital cameras, scanners, computer photographs, Graphic Interchange formats and/or photographs, undeveloped photographic film, slides, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI, and MPEG), and any electronic data storage devices including, but not limited to hardware, software, diskettes, backup tapes, CD-ROMS, DVD, Flash memory devices, and other storage mediums; any input/output peripheral devices, including but not limited to passwords, data security devices and related documentation, and any hardware/software manuals related to or used to: visually depict child pornography; contain information pertaining to the interest in child pornography; and/or distribute, receive, or possess child pornography, or information pertaining to an interest in child pornography, or information pertaining to an interest in child pornography;

ii.    books and magazines containing visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

iii.    originals, copies, and negatives of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256; and

iv.     motion pictures, films, videos, and other recordings of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

b.     information or correspondence pertaining to the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256, that were transmitted or received using computer, some other facility or means of interstate or foreign commerce, common carrier, or the U.S. mail including, but not limited to:

I.     envelopes, letters, and other correspondence including, but not limited to, electronic mail, chat logs, and electronic messages, establishing possession, access to, or transmission through interstate or foreign commerce, including by United States mail or by computer, of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256; and

ii.     books, ledgers, and records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission through interstate or foreign commerce including by United States mail or by computer of any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

c.     credit card information including but not limited to bills and payment records;

d.     records evidencing occupancy or ownership of the premises described above, including, but not limited to, utility and telephone bills, mail envelopes, or addressed correspondence; and

e.     records or other items which evidence ownership or use of computer equipment found in the above residence, including, but not limited to, sales receipts, bills for Internet access, and handwritten notes.